MICHAEL J. HINES, ISB #6876
   Email: mhines@lukins.com
REID JOHNSON, *Pro Hac Vice Forthcoming*
   Email: rjohnson@lukins.com
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W. Sprague Avenue
Spokane, WA 99201
Telephone: 509.455-9555
Facsimile: 509.747.2323

*Attorneys for Plaintiff BigRentz, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BIGRENTZ, INC., a Delaware Corporation<br><br>                    Plaintiff,<br><br>       v.<br><br>KGM ENTERPRISES, LLC an Idaho Limited Liability Company,<br><br>                    Defendant. | NO.<br><br>VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>Jury Trial Demanded |

Plaintiff BigRentz, Inc. ("BigRentz"), by and through its attorneys Lukins & Annis, P.S., complains and alleges against KGM Enterprises, LLC ("KGM") as follows:

## I.    PARTIES

1.1    BigRentz is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Irvine, California.

1.2    KGM is a limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business at 11420 W Bronte Street, Boise, Idaho, 83709. KGM is conducting business within the State of Idaho and may be served with process via its registered agent for service, Business Filings Incorporated, 921 S. Orchard St., Ste. G, Boise, Idaho, 83705.

1.3    On information and belief, KGM is directly engaging in the misappropriation of BigRentz' trade secrets within this Judicial District.

## II.    JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction over the Defend Trade Secret Act claims in this action pursuant to 28 U.S.C. § 1331 because they constitute a federal question. The Court also has jurisdiction pursuant to 28 U.S.C.

§ 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.2    This Court has personal jurisdiction over Defendant KGM because KGM maintains sufficient contacts in Idaho, is doing business in this District and committing acts of misappropriation of trade secrets, and other wrongs, in this District.

3.3    Venue is proper in this District under 28 U.S.C. § 1391 because KGM's principal place of business and its registered agent are located in Ada County, Idaho.

### III.    FACTUAL ALLEGATIONS

#### A. BigRentz Developed Valuable Trade Secrets Over Years of Investment and Development

3.4    BigRentz is a technology-based construction equipment rental and logistics company founded in 2012. It uses a network of relationships to find the best rental and transportation solutions for its customers. It offers its customers a large variety of construction equipment at a set price, including cranes, excavators, bulldozers, tractors, trenchers, boom lifts, scissor lifts, skid steer loaders, backhoes, storage containers, generators, among many other types of equipment. It operates its business and distributes its services throughout the United States.

VERIFIED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 3

3.5     Over the course of its existence, BigRentz has developed one of the largest online construction equipment rental networks in the United States ("Equipment Rental Network" or "Network"). BigRentz developed the Equipment Rental Network by researching inventory lists and rental prices for construction equipment suppliers throughout the United States. BigRentz then stores the statistics and information in its proprietary database to create a nationwide Equipment Rental Network accessible only by BigRentz and used only for its customers. The Network provides access to quality equipment throughout the United States.

3.6     BigRentz began building its Equipment Rental Network from its onset by researching equipment suppliers and establishing relationships with them. In its first two years, BigRentz grew its network to over 1,000 rental equipment suppliers in over 6,500 locations nationwide. Today, the supplier network has grown to over 6,000 equipment suppliers that encompass over 10,000 locations nationwide:



3.7    BigRentz maintains core information for each supplier within its network, such as pricing models, equipment lists, contact information, sales history, sales volume, and selling preferences, among other information.

3.8    BigRentz has invested, and continues to invest, considerable resources to build and maintain its proprietary Equipment Rental Network. To date, BigRentz has invested over $6 million in labor costs alone to build out and maintain the Equipment Rental Network. Duplicating the Equipment Rental Network would take years and substantial investment from third parties.

3.9    Relying on the information within its Equipment Rental Network, BigRentz ascertains the base cost per equipment type in specific markets

throughout the United States. It also arranges payment terms and ordering protocols with each supplier in the Equipment Rental Network. BigRentz has also spent considerable resources negotiating reduced equipment rental fees with its suppliers.

3.10   BigRentz then utilizes a complex digital algorithm to create and maintain a competitive pricing model for its customers on the online rental marketplace. This allows customers to work with one vendor—BigRentz—and obtain equipment rentals throughout the United States at a competitive price.

3.11   BigRentz's Equipment Rental Network and competitive pricing model allow it to simplify its customers' procurement and logistics challenges when renting construction equipment. Rather than research and seek out their own suppliers in different markets, customers can simply contact BigRentz and allow BigRentz to complete the rental procurement process and deliver equipment to a location of their choosing. Moreover, customers can use BigRentz' online ordering platform and mobile application to place orders, extend rentals, terminate rentals, report issues, and manage invoices in a seamless fashion.

3.12   The benefits derived from the Equipment Rental Network and its substantial sales efforts have allowed BigRentz to develop and cultivate a robust catalogue of customers. Like its Equipment Rental Network, BigRentz maintains

valuable information regarding every customer, which is stored on a proprietary database ("Customer Database"). This information includes contact information, sales history, sales volume, ordering preferences, rental requirements, credit history, credit limits, the identities and preferences of key personnel, internal notations about past orders, future opportunities with each customer, among other valuable information, and allows BigRentz to create customer profiles for its customers. The majority of this information is not available publicly, and allows BigRentz to optimize their offerings, contracts, performance, marketing, sales, and to maintain sound relationships with its customers.

3.13   BigRentz has employed complex sales efforts to develop its Customer Database. BigRentz invests in substantial digital marketing campaigns that costs roughly $1.5-$2 million annually in search engine optimization, search engine marketing, and pay-per-click advertising. BigRentz also employs staff to call on all digital marketing leads and procure new customers. Over its life to date, BigRentz has spent over $14 million in advertising expenses alone to establish customers and develop the Customer Database.

3.14   BigRentz also maintains a team of sales agents to execute directs sales efforts. BigRentz' sales team relies in part on its Customer Database to form new customer profiles and search for new customers. The team then makes hundreds of

sales calls per week to seek out new clients and on-board new clients to the platform. This sales team costs roughly $750,000 per year.

3.15   BigRentz also employs a team of account executives to engage with its existing customers to retain them and expand their relationships. Employing these account executives comes at a considerable cost, but allows BigRentz to maintain and expand its Customer Database and generate additional revenue.

## B. BigRentz' Equipment Rental Network and its Customer Database Constitute Trade Secrets

3.16   BigRentz' Customer Database and its Equipment Rental Network constitute protectable trade secrets because BigRentz derives independent economic value from the information, and the information is not generally known or readily ascertainable by proper means by others who can obtain economic value from its use or disclosure.

3.17   BigRentz' Customer Database and its Equipment Rental Network are the core of its business and would be irreplaceable if lost or stolen.

3.18   It would take years and substantial investment from third parties to duplicate the Customer Database and Equipment Rental Network.

3.19   BigRentz' Customer Database and its Equipment Rental Network have significant economic value to BigRentz. It would also be of significant

economic and competitive value to its competitors, and harmful to BigRentz, if its competitors obtained or used such information.

3.20    BigRentz has also utilized reasonable efforts under the circumstances to maintain the secrecy of the Equipment Rental Network and its Customer Database.

3.21    BigRentz' employees are required to sign a Proprietary Information and Inventions Agreement ("Inventions Agreement"). The Inventions Agreement provides notice that all business, technical, and financial information "**including, without limitation, the identity of and information relating to customers or employees**" constitutes "Proprietary Information." The Inventions Agreement requires employees to hold in confidence, not disclose or use any Proprietary Information except within the scope of their employment, and to return to BigRentz any items containing Proprietary Information upon termination of employment. Moreover, these provisions continue in effect after the termination of employment.

3.22    Thus, all current and former employees owe BigRentz a continuing contractual duty not to disclose or use any of BigRentz' trade secrets and/or proprietary information.

VERIFIED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 9

3.23   The Equipment Rental Network and its Customer Database are saved on secure internal servers and cloud-based databases. Access must be permitted to these locations and is controlled by user ID's and passwords. These user ID's and passwords are required to be updated periodically.

3.24   BigRentz provides limited access to specific employees and protects internal documents reflecting this work information with individualized passwords.

## C. KGM Misappropriated BigRentz' Trade Secrets By Hiring Former BigRentz Employees and Soliciting BigRentz' Customers

3.25   KGM is a heavy equipment rental service that provides services throughout the United States.

3.26   Upon information and belief, KGM was formed and is owned, at least in part, by Kevin Martin. Martin is a former employee of BigRentz and worked in sales for BigRentz. Martin had access to and familiarity with both the Equipment Rental Network and the Customer Database and was intimately involved in its business operations. Martin also executed an Employment Agreement and Proprietary Information and Inventions Agreement. Thus, he was in a position of confidence and trust at BigRentz and still owes a duty to not to disclose or use any trade secret or proprietary information.

3.27   Like BigRentz, KGM seeks to create a network of equipment suppliers and facilitate equipment rentals between its customers and various

suppliers. KGM is a direct competitor of BigRentz and developed and incorporated the same business model.

3.28   After starting a competing company and incorporating the same business model, and without BigRentz' knowledge or consent, KGM strategically recruited BigRentz' employees with access to and knowledge of critical trade secrets and proprietary information. For example, of the six employees targeted, four of which were on the sales team that had intimate knowledge of BigRentz' Customer Database and Equipment Rental Network. Moreover, upon information and belief, these six employees now make up about half of KGM's team.

3.29   Upon information and belief, KGM is aware that some or all of these employees also have executed an Employment Agreement and Proprietary Information and Inventions Agreement, which are similar and/or identical to the agreement executed by Martin himself. These employees maintain an ongoing duty to maintain its secrecy of the Customer Database, Equipment Rental Network, and other proprietary information.

3.30   Through the solicited employees, KGM has gained access to BigRentz' Customer Database and its Equipment Rental Network.

3.31   In turn, KGM employees have solicited and continue to solicit business from customers derived from BigRentz' Customer Database.

3.32  Such actions violate the terms of the Employment Agreement and Proprietary Information and Inventions Agreement, and therefore violate their ongoing duty to maintain the secrecy of the Customer Database and its Equipment Rental Network.

3.33  KGM employees, acting within the course and scope of their employment, have specifically targeted BigRentz' customers in various locations around the country by promising to undercut their prices. The departed BigRentz employees only gained access to these national clients as a result of their employment with BigRentz.

3.34  When soliciting BigRentz' customers, KGM employees have even requested that customers remove any reference to BigRentz in their communications, acknowledging their prior relationship with BigRentz.

3.35  Such actions constitute willful misappropriation of BigRentz' trade secrets.

3.36  As a proximate result of KGM's willful misappropriation of BigRentz' trade secrets, BigRentz has lost customers in their entirety, has lost portions of business from current customers, and has been forced to spend resources explaining the ongoing solicitation attempts to its current clients, among other disruptions and harm to its goodwill.

3.37   KGM's   willful misappropriation of BigRentz' trade secrets has proximately caused and unless enjoined, will continue to cause, damages, substantial harm, and irreparable injury, for which BigRentz has no adequate remedy at law.

## CLAIMS FOR RELIEF

### First Claim for Relief: Violation of Idaho Trade Secret Act

3.1    BigRentz incorporates the preceding paragraphs as if fully set forth herein.

3.2    BigRentz' Customer Database and the Equipment Rental Network constitute valid trade secrets pursuant to Idaho Uniform Trade Secret Act ("IUTSA"), I.C. § 48-801. BigRentz' derives independent economic value from the information, such information is not readily ascertainable by proper means by other parties who can obtain economic value from its disclosure and use, and the information is the subject of reasonable efforts to maintain its secrecy.

3.3    KGM has and continues to misappropriate BigRentz' trade secrets. KGM has gained access to BigRentz' trade secrets through the solicitation and procurement of BigRentz' employees, knowing they maintained a duty to maintain the secrecy of BigRentz' trade secrets and proprietary information. Nevertheless, the converted employees then used and/or disclosed information contained within

BigRentz' Customer Database, solicited customers, and, upon information and belief, used information contained within BigRentz' Equipment Rental Network. Thus, KGM used the trade secrets without express or implied consent and knew or had reason to know that the information was acquired and/or derived from a person who owed a duty to maintain the secrecy of the trade secret.

3.4    KGM used and is using BigRentz' trade secrets without BigRentz' express or implied consent.

3.5    KGM's conduct constitutes willful and malicious misappropriation of trade secrets in violation of the IUTSA.

3.6    KGM's willful misappropriation and use of Blue Roots trade secrets has proximately caused and, unless enjoined, will continue to proximately cause, damage, substantial harm, and irreparable injury, for which Blue Roots has no adequate remedy at law. BigRentz is entitled to a preliminary and permanent injunction prohibiting both actual and threatened use by KGM of BigRentz' trade secrets pursuant to I.C. § 48-802.

3.7    BigRentz is entitled to damages proximately caused by KGM's misappropriation and use of BigRentz' trade secret information pursuant to I.C. § 48-803.

3.8    BigRentz is entitled to an award of exemplary damages pursuant to I.C. § 48-803 for KGM's willful misappropriation.

3.9    BigRentz is also entitled to recover its reasonable attorney fees and costs incurred as a result of being forced to enforce its rights under the IUTSA.

### Second Claim for Relief: Violation of the Defend Trade Secret Act

3.10    BigRentz incorporates the preceding paragraphs as if fully set forth herein.

3.11    KGM's misappropriation of trade secrets is actionable under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.

3.12    BigRentz' Customer Database and the Equipment Rental Network constitute valid trade secrets pursuant to the DTSA, 18 U.S.C. § 1839. BigRentz' derives independent economic value from the information, such information is not readily ascertainable by proper means by other parties who can obtain economic value from its disclosure and use, and the information is the subject of reasonable efforts to maintain its secrecy.

3.13    KGM has and continues to misappropriate BigRentz' trade secrets. KGM has gained access to BigRentz' trade secrets through the solicitation and procurement of BigRentz' employees, knowing they maintained a duty to maintain the secrecy of BigRentz' trade secrets and proprietary information. Nevertheless,

the converted employees then used and/or disclosed information contained within BigRentz' Customer Database, solicited customers, and, upon information and belief, used information contained within BigRentz' Equipment Rental Network. Thus, KGM used the trade secrets without express or implied consent and knew or had reason to know that the information was acquired and/or derived from a person who owed a duty to maintain the secrecy of the trade secret.

3.14   KGM used and is using BigRentz' trade secrets without BigRentz' express or implied consent.

3.15   KGM's conduct constitutes willful and malicious misappropriation of trade secrets in violation of the DTSA.

3.16   KGM's willful misappropriation and use of Blue Roots trade secrets has proximately caused and, unless enjoined, will continue to proximately cause, damage, substantial harm, and irreparable injury, for which Blue Roots has no adequate remedy at law. BigRentz is entitled to a preliminary and permanent injunction prohibiting both actual and threatened use by KGM of BigRentz' trade secrets pursuant to 18 U.S.C. § 1836(3)(A).

3.17   BigRentz is entitled to damages proximately caused by KGM's misappropriation and use of BigRentz' trade secret information, and damages for

any unjust enrichment caused by the misappropriation pursuant to 18 U.S.C. § 1836(3)(B)

3.18   BigRentz is entitled to an award of exemplary damages pursuant to 18 U.S.C. § 1836(3)(C) for KGM's willful misappropriation.

3.19   BigRentz is also entitled to recover its reasonable attorney fees and costs incurred as a result of being forced to enforce its rights pursuant to 18 U.S.C. § 1836(3)(D).

## Third Claim for Relief: Tortious Interference With Prospective Economic Advantage

3.20   BigRentz incorporates the preceding paragraphs as if fully set forth herein.

3.21   BigRentz possessed valid contractual relationships, rights, and economic expectancies, including but not limited to, customers contained within its Customer Database.

3.22   KGM was aware of said economic expectancies.

3.23   As described above and as will be more fully established at the time of trial, KGM intentionally interfered with said economic expectancies by knowingly and intentionally inducing a termination of said expectancies.

3.24    KGM desired to bring about the interference and knew that the interference was certain or substantially certain to occur. KGM's interference was wrongful and based on improper purposes and/or improper means.

3.25    As a proximate and actual result of KGM's actions, BigRentz has suffered and continues to suffer damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BigRentz prays for relief as follows:

1.    For equitable relief in the form of a preliminary injunction and a permanent injunction against Defendant enjoining and restraining it from:

    a.    Accessing, possessing, or utilizing, in any way, any of BigRentz' confidential information and trade secrets, including but not limited to its Customer Database and the Equipment Rental Network; and

    b.    Soliciting, selling, or exchanging any products or services derived from BigRentz' trade secrets;

2.    For an award of damages in an amount to be proven at trial;

3.    For an award of exemplary damages under the IUTSA and the DTSA;

4.    For the right to amend this Complaint to supplement facts and/or causes of action upon discovery of additional information;

5.      For an award of reasonable attorneys' fees and costs under the IUTSA and the DTSA, all other applicable statutes, common law, contract, and pursuant to the Court's equitable powers;

6.      For an award of pre-judgment and post-judgment interest; and

7.      For such other and further relief as the Court deems just and equitable.


DATED: September 23rd, 2022.

LUKINS & ANNIS, P.S.


By:   __/s/ Michael J. Hines_____
        Michael J. Hines, ISB #6876
        Reid G. Johnson, WSB #44338, *pro hac vice forthcoming*

        Attorneys for Plaintiff BigRentz, Inc.

## **VERIFICATION OF PLAINTIFF**

STATE OF CALIFORNIA     )
                                          :ss.
County of Orrange        )

     I, _Scott A. Cannon_ being first duly sworn on oath, state and depose that I am the ___ C E o ___ of Plaintiff, BigRentz, Inc., that I have read the foregoing document, know the contents thereof, and I believe the facts stated therein to be true.

                                _____


STATE OF CALIFORNIA     )
                                          :ss.
County of Orange        )

     I, the undersigned notary public does hereby certify that on this 11th day of October, 2022, personally appeared before me _____, who, being by me first duly sworn, declared that he is the _____ of Plaintiff, BigRentz, Inc., that he signed the foregoing documents, and that the statements therein contained are true to the best of his knowledge.



                                _____
                                Notary Public for California

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                 )

County of _Orange_               )

On _October 11, 2022_ before me, _Victoria Mercado, Notary Public_
        *Date*                        *Here Insert Name and Title of the Officer*

personally appeared _Scott Cannon_
                               *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**VICTORIA MERCADO**
Notary Public - California
Orange County
Commission # 2306957
My Comm. Expires Sep 26, 2023

Signature _Victoria Mercado_
                 *Signature of Notary Public*

*Place Notary Seal Above*

──────────── **OPTIONAL** ────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual     ☐ Attorney in Fact

☐ Trustee       ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual     ☐ Attorney in Fact

☐ Trustee       ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907