UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BIGRENTZ, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KGM ENTERPRISES, LLC, an Idaho Limited Liability Company,<br><br>Defendant. | Case No. 1:22-cv-00430-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION** |

Before the Court is Plaintiff BigRentz, Inc.'s Motion for Preliminary Injunction against Defendant KGM Enterprises, LLC. (Dkt. 22). The Court heard oral argument on November 9, 2023, and took the motion under advisement. For the reasons discussed below, the Court denies the motion.

I. BACKGROUND

"BigRentz is a technology-based construction equipment rental and logistics company." (Dkt. 1 at ¶ 3.4). It relies on "a network of relationships" to connect its customers with "the best rental and transportation solutions" for "a large variety of construction equipment." (*Id.* at ¶ 3.4). Over the course of its business, BigRentz has developed databases related to both its equipment rental network and its customers. (*Id.* at ¶¶ 3.5, 3.12). The primary subject of BigRentz's motion for preliminary injunction is its customer database.

BigRentz's customer database "includes contact information, sales history, sales volume, ordering preferences, rental requirements, credit history [and limits], the identities and preferences

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 1**

of key personnel, internal notations about past orders, and future opportunities with each customer," among other things. (*Id.* at ¶ 3.12). BigRentz uses this information to create "customer profiles." (*Id.*). It alleges that "[t]he majority of this information is not available publicly" and that the database is a protectable trade secret. (*Id.* at ¶ 3.12; *see also* Dkt. 26-2 at ¶ 7) ("The vast majority of the information on the customer database is not available publicly.").

From the fall of 2014 until 2016, Kevin Martin worked in procurement for BigRentz. (Dkt. 29-8 at ¶ 5). In 2019, Martin started KGM, a construction equipment rental company. (*Id.* at ¶ 3). BigRentz alleges KGM is its "direct competitor" and has "developed and incorporated the same business model." (Dkt. 1 at ¶ 3.27). Further, BigRentz alleges "KGM strategically recruited [its] employees with access and knowledge of critical trade secrets and proprietary information"; KGM has gained access to its customer database through these employees; and KGM employees have solicited and continue to solicit business from customers derived from BigRentz's customer database. (*Id.* at ¶¶ 3.28-3.31). BigRentz alleges one of these KGM employees is Filbert Covarrubias, who left BigRentz in March 2022 and thereafter joined KGM. (Dkt. 29-5 at ¶ 3).

In October 2022, BigRentz filed this lawsuit against KGM, alleging claims for violation of the Idaho Trade Secret Act (ITSA), Idaho Code §§ 48-801 -807; violation of the Defend Trade Secret Act (DTSA), 18 U.S.C. §§ 1831-39, and tortious interference with prospective economic advantage. (Dkt. 1 at pp. 13-18). Several months later in April 2023, BigRentz filed a motion for preliminary injunction asking the Court to enjoin KGM from "using any proprietary information belonging to BigRentz" and from "soliciting BigRentz's customers through the use of [its] trade secrets and confidential information." (Dkt. 23 at p. 21).

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 2**

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the entry of a preliminary injunction. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To obtain relief, the party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first factor "is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Further, the "possibility" of irreparable harm is insufficient; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 555 U.S. at 22.

## III. ANALYSIS

### A. ITSA

BigRentz seeks an injunction based on its trade secret claims. Specifically, BigRentz contends KGM misappropriated its customer database.[1] (Dkt. 23 at p. 11). Courts have analyzed

---

[1]  Despite BigRentz's allegations that the equipment rental network database is a trade secret, its arguments largely do not address that database. (*See* Dkt. 23). BigRentz presents a limited, conclusory argument that the database is a protectable trade secret. (*See* Dkt. 23 at pp. 3-6). That argument, however, is insufficient to carry BigRentz's burden of demonstrating, by a clear

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 3**

claims brought under the DTSA and state trade secret acts, such as the ITSA, together because the elements are substantially similar. *See, e.g.*, *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). BigRentz relies on the ITSA to assert KGM misappropriated its trade secrets in support of its preliminary injunction motion. (Dkt. 26-1). Accordingly, the Court analyzes the motion under the ITSA.

Under Idaho law, "[a]ctual or threatened misappropriation may be enjoined." I.C. § 48-802(1). A trade secret is defined as "information, including a formula, pattern, compilation, program, computer program, device, method, technique, or process," that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

I.C. § 48-801(5). Ordinarily, a customer list is a trade secret if it is not generally known to or readily ascertainable by others and if it is subject to reasonable efforts to maintain its secrecy. *Westco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1086 (2010) (explaining customer lists are trade secrets); *see also Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 943 (Wash. 1999) (ruling customer list, whether written or merely memorized, can be a trade secret).

Generally, misappropriation of a trade secret occurs when a person, who knows or has reason to know the trade secret was acquired by improper means, acquires the trade secret or when

---

showing, that the equipment rental database is a trade secret and that KGM misappropriated it. *See Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 744, 748 (9th Cir. 2011) (rejecting conclusory argument as basis for preliminary injunction); *see also Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 456 P.3d 201, 217 (Idaho 2019) (providing misappropriation claim requires showing a trade secret exists and was misappropriated).

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 4**

a person with the requisite knowledge of the trade secret uses or discloses it without express or implied consent. *See generally* I.C. § 48-801(2) (defining misappropriation). To prevail on a misappropriation claim, BigRentz must show that a trade secret existed and that KGM acquired, disclosed, or used the trade secret by improper means. *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 456 P.3d 201, 217 (Idaho 2019); *Northwest Bec-Corp v. Home Living Serv.*, 41 P.3d 263, 268 (Idaho 2002); *Basic Am., Inc. v. Shatila*, 992 P.2d 175, 183 (Idaho 1999); *see* I.C. §§ 48-802(1), -801(2), (5).

### B. Likelihood of Success on the Merits

At this stage, BigRentz has failed to make "a clear showing" it is likely to succeed on the merits that KGM misappropriated its trade secrets. *See Winter*, 555 U.S. at 20 (stating elements for preliminary injunction); *Mazurek*, 520 U.S. at 972 (stating standard for preliminary injunction). The Idaho Supreme Court's decision in *Northwest Bec-Corp*, 41 P.3d at 268, is instructive in explaining why BigRentz's likelihood of success on the merits is not entirely clear at this stage of the case. In *Northwest Bec-Corp*, the plaintiffs employed Hughes who entered into a confidentiality agreement, agreeing not to reveal any of the plaintiffs' proprietary information, including its customer lists. *Id.* at 265. When Hughes left her employment with the plaintiffs, approximately ninety of the plaintiffs' customers ended their business relationship with the plaintiffs and began doing business with Hughes' new employer, the defendant. *Id.* at 266. The plaintiffs sued claiming, among other things, that the defendant violated the ITSA. *Id.* The district court granted summary judgment for the defendant finding no evidence in the record supporting the plaintiffs' claim that Hughes had misappropriated the plaintiffs' trade secrets. *Id.*

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 5**

On appeal, the Idaho Supreme Court noted neither party disputed the plaintiffs' customer list was a trade secret. *Id.* at 267. Regardless, the Court explained that "any employee will naturally take with her to a new company the skills, training, and knowledge she has acquired from her time with her previous employer. This basic transfer of information cannot be stopped, unless an employee is not allowed to pursue her livelihood by changing employers." *Id.* at 268. It noted that "any other rule would force a departing employee to perform a prefrontal lobotomy on himself or herself." *Id.* (brackets and quotation omitted). The Court further explained an employee's "training on maintaining good customer relationships, developing new clients, and serving current clients is not a trade secret, but rather job skills . . . developed over time while employed" and that "the legislature did not intend the [ITSA] to be read so broadly as to preclude the hiring of an employee from a competitor." *Id.* at 268. Because the defendant "provided alternative explanations for the customer changes that [did] not involve misappropriation," the Court concluded that "the burden shifted to [the plaintiffs] to demonstrate there was a genuine issue of material fact in order to survive summary judgment" and that the plaintiffs failed to meet that shifted burden. *Id.* at 268-69.

In this case, KGM does not dispute that BigRentz's customer data basis is a trade secret or that courts generally recognize customer information, such as a customer list, as a trade secret. BigRentz, however, has not provided any proof KGM or its employees misappropriated BigRentz's customer database. Although BigRentz alleges numerous ex-employees have gained access to its customer database (Dkt. 1 at ¶¶ 3.28, 3.30), it specifically identifies only three former employees by name—Kevin Martin, Fil Covarrubias, and Rudy Falcon. BigRentz does not

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 6**

provide any evidence, however, that either Falcon or Martin have misappropriated any trade secrets from the customer database or otherwise used its trade secrets on KGM's behalf.

Further, BigRentz does not provide any evidence Covarrubias improperly accessed, downloaded, or otherwise copied information from the customer database. Rather, BigRentz's evidence indicates only that Covarrubias communicated with BigRentz's customers after KGM employed him. Covarrubias attests that, for purposes of these communications, he used the contact information in his cellphone, not from BigRentz's customer database. (Dkt. 29-5). BigRentz does not offer any evidence to the contrary. For example, it does not offer forensic evidence showing Covarrubias downloaded information from the database or improperly accessed the database after his employment ended.

By relying on his cellphone contacts to communicate with BigRentz's customers, Covarrubias's conduct is more akin to the use of a customer list than to the misappropriation of all the information contained in the customer database. BigRentz's evidence of Covarrubias' allegedly wrongful conduct includes several emails from Covarrubias with the subject line "New Contact Info" to BigRentz's customers. (Dkts. 26-13, 26-15, 26-16). The parties dispute the nature of these emails. Covarrubias characterizes them as "announcements"; meanwhile, BigRentz characterizes them as solicitations. (*Compare* Dkt. 29-5 at ¶ 7 (characterizing emails as "announcements") *with* Dkt. 31 at p. 2 (characterizing emails as solicitations)). The distinction matters as the former is likely lawful, while the latter may not be. *See MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 521 (9th Cir. 1993) (ruling that "the right to *announce* a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 7**

engage in fair competition" and that "the common law right to compete fairly and the right to announce a new business affiliation have survived the enactment of the UTSA").

BigRentz also produces evidence of Covarrubias' communications with some of BigRentz's customers, showing KGM was providing services for those customers. (*See, e.g.*, Dkt. 26-2 at ¶ 14, 19, 23, 26) (identifying customers at issue). For each of the customers that BigRentz specifically identifies, however, KGM produced responsive evidence—including several third-party declarations—explaining the customers reached out to Covarrubias or otherwise chose to work with KGM because of their relationship with Covarrubias, not because of any solicitation. (*See* Dkt. 29-3; Dkt. 29-4 at ¶ 4; Dkt. 29-5 at ¶¶ 8-12; Dkt. 29-7 at ¶ 5) (describing relationships). As in *Northwest Bec-Corp*, KGM's presentation of this evidence shifts the burden to BigRentz to show that, contrary to the declarants' statements, Covarrubias used KGM's database or other trade secret information to solicit BigRentz's customers.

The evidence the parties have presented at this stage raises numerous disputed factual issues. For example, did Covarrubias rely on proprietary information or readily publicly available information to communicate with BigRentz's customers? *See Trumble*, 456 P.3d at 219 (concluding information derived from former employee's phone contacts was not trade secret); *La Bella Vita, LLC v. Shuler*, 353 P.3d 420, 435 (Idaho 2015) ("A person's contact information can be ascertained in a variety of ways, including through involuntary sharing or selling of information. It is nearly impossible to completely control these other avenues."). Were Covarrubias' emails informing customers of his new contact information announcements or did they constitute solicitations? *See MAI Sys. Corp.*, 991 F.2d at 521 (ruling former employee has right to announce new affiliation). Did BigRentz take reasonable efforts under the circumstances to maintain the

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 8**

secrecy of its customers' identity and contact information? Although Covarrubias signed an agreement providing he would not disclose or use "information relating to customers" (Dkt. 24-3), there is no evidence that BigRentz demanded Covarrubias return a company cellphone, delete his cellphone contacts, or otherwise ensure Covarrubias did not continue to possess its customers' contact information after his employment terminated.[2] *See Trumble*, 456 P.3d at 220 (noting employer did not take reasonable efforts to maintain secrecy of contact information). Did Covarrubias solicit the customers BigRentz identifies, or did the customers contact Covarrubias directly because they possessed his contact information and sought out his skills? *See Northwest Bec-Corp.*, 41 P.3d at 268 (noting employees' "training on maintaining good customer relationships, developing new clients, and serving current clients is not a trade secret"); *Trumble*, 456 P.3d at 220 ("Merely using information obtained during [an employee's] association with [his former employer] in a new capacity does not rise to the level of misappropriation."). Perhaps the answer depends on the particular customer. Because the parties' submissions raise these and other disputed factual issues, BigRentz has failed at this stage to show *clearly* that it is likely to succeed on the merits of its claim that KGM misappropriated BigRentz's trade secrets.

    **C. Irreparable Injury, Balance of Equities, and Public Interest**

---

[2] Covarrubias signed a contract agreeing to "hold in confidence and not disclose or . . . use any Proprietary Information," which includes "the identity of and information relating to customers . . . ." (Dkt. 24-3 at p. 3). The agreement states this provision "shall continue in effect after termination of [Covarrubias'] employment" without limitation as to time or geographic location. (*Id.*). That BigRentz generally designated its customers' identity and information as "proprietary," however, does not conclusively establish that information as a trade secret, and whether the provision is legally enforceable is not presently at issue.

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 9**

None of the other factors—irreparable injury, the balance of equities, and the public interest—weigh sufficiently in BigRentz's favor to overcome its inability to clearly show the most important factor—a likelihood of success on the merits. *See Garcia*, 786 F.3d at 740 (noting likelihood of success on merits most important factor). Although the Supreme Court has noted the public benefit of treating customer lists as trade secrets, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 483 (1974), factual questions exist whether any of the information Covarrubias and KGM relied on and used was, indeed, a misappropriated trade secret. BigRentz argues a "limited injunction" prohibiting KGM from using BigRentz's proprietary information would "merely prevent KGM from engaging in unlawful acts." (Dkt. 23 at p. 20). That is true, of course, only if BigRentz can show KGM misappropriated and is using BigRentz's trade secrets, which remains an unresolved issue that BigRentz, at this stage, has not clearly shown will be resolved in its favor.

Finally, BigRentz has not demonstrated irreparable injury is likely in the absence of a preliminary injunction. Generally, an "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). BigRentz fails to articulate why a damage award cannot remedy the loss of its business KGM's trade secret misappropriation purportedly caused. BigRentz does argues KGM has damaged its goodwill, which "may not be reasonably quantified." (Dkt. 26-1 at p. 19). In support, it explains it "had to repair relationships with current clients." (*Id.*) As this statement indicates, however, BigRentz was able to repair its goodwill, which apparently was not irreparably injured at least with respect to the only customer BigRentz identifies related to its loss of goodwill argument.

**MEMORANDUM DECISION AND ORDER RE MOTION FOR PRELIMINARY INJUNCTION - 10**

Moreover, BigRentz's delay in seeking a preliminary injunction—from October 2022 when it filed this action until it filed its preliminary injunction motion in April 2023—undercuts its argument that it will suffer irreparable harm absent injunctive relief. (Dkt. 29 at pp. 8-9). Courts regularly view a delay in seeking a preliminary injunction as indicative of a lack of urgency and irreparable harm. *See, e.g.*, *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay in seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). Because BigRentz has failed to make a clear showing it is entitled to preliminary injunctive relief, the Court denies its motion for such relief.

## IV. ORDER

**IT IS ORDERED that:**

1. Plaintiff BigRentz, Inc's Motion for Preliminary Injunction (Dkt. 22) is **DENIED**.

DATED: November 13, 2023

Amanda K. Brailsford
U.S. District Court Judge